IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:25-cr-00007-SMR-SBJ-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON MOTION TO SUPPRESS |
| v. | ) | |
| | ) | |
| JACOB LAWSON BERTRAND, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Jacob Lawson Bertrand moves to suppress statements he made to his probation officer, arguing that the government obtained them without the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). For the reasons that follow, the motion to suppress is DENIED. [ECF Nos. 24, 25].

## I.    BACKGROUND

Defendant faces new federal charges related to child pornography arising from conduct during his supervised release. Previously, he pled guilty to possession of child pornography and received 78 months' imprisonment followed by 120 months' supervised release. *See United States v. Bertrand*, Case No. 3:14-cr-00060-SMR-SBJ-1 (S.D. Iowa 2016). The Court later revoked Defendant's supervised release based on multiple violations and imposed a sentence of five months' imprisonment followed by 85 months of supervised release. As a new condition of supervision, the Court required Defendant to reside at a residential reentry center ("RRC") for up to 120 days following his release from prison. Defendant complied with this condition.

Soon after reporting to the RRC, RRC staff discovered that Defendant possessed an unauthorized cellular phone and reported this violation to the United States Probation Office.

Probation officers responded to the RRC and briefly met with Defendant in an office adjacent to the lobby.  Prior to this meeting, Defendant provided a urine specimen that showed he was not under the influence of any controlled substance.  During the encounter, Defendant remained free from physical restraint.  The meeting proceeded with unimpeded access to the exit, without raised voices, and without coercive conduct by the probation officers.  When Defendant gave inconsistent explanations for the phone's presence, the officers directed him to report to the probation office at the Davenport federal courthouse later that afternoon.   The probation officers departed the RRC with the phone in their possession.  Defendant then proceeded of his own free will to the Davenport Probation Office, walking the few blocks between the two locations and stopping for lunch along the way.

At the Probation Office, Officer Liz Yager examined the seized phone and found that it contained several applications, including Snapchat, TikTok, Twitch, and Gmail.  A review of the Iowa Sex Offender Registry revealed that Defendant had failed to register these internet applications or the phone itself within five days as Iowa law requires.

Defendant arrived at the Davenport Probation Office that afternoon.  He passed through courthouse security and descended to the lower level where the Probation Office is located.  There, he met with Officer Yager in a meeting room.  No restraints were applied to his person.  The door remained unlocked, and he was free to depart at will.  During the approximately 45-minute meeting, Officer Yager at no time raised her voice, made any threats, or otherwise acted in any way to intimidate Defendant.  Defendant did not appear to be under the influence of any substance at the time of the meeting and maintained a calm, generally cooperative demeanor throughout the meeting, though certain of his responses proved untruthful.  During the meeting with Officer Yager, he admitted that the phone was his.  He also admitted that he had used Discord, Twitch,

and other gaming applications to have unauthorized contact with minors and that he had viewed anime child pornography several times per week since June.  Officer Yager gave Defendant no *Miranda* warnings before this questioning.

Following his meeting with Officer Yager, Defendant was directed to wait in the public lobby outside the Probation Office.  He complied.  While he waited, a revocation motion was drafted and a warrant issued alleging multiple violations of supervised release.  United States Marshals Service deputies arrested Defendant arrest in the lobby later that afternoon.

## II.     DISCUSSION

Defendant advances two arguments for suppressing his statements.  First, he contends that the statements resulted from custodial interrogation without the required *Miranda* warnings. Second, he maintains that his statements were involuntary.  The Court considers each contention in turn.

### A.  Miranda *Analysis*

The Fifth Amendment requires that law enforcement officers provide *Miranda* warnings before conducting a custodial interrogation.  *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017) (citing *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012)).  A person is in custody for *Miranda* purposes when "taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.  This determination requires examining the totality of the circumstances to assess "whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest."  *United States v. Muhlenbruch*, 634 F.3d 987, 995–96 (8th Cir. 2011) (quoting *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007)).  Neither the officer's subjective intent nor the suspect's actual perception controls the analysis.  *United States v. Williams*, 760 F.3d 811, 814 (8th

Cir. 2014) (citation omitted).  Rather, the test is objective: whether a reasonable person in the suspect's position would have felt free to end the questioning and leave.  *United States v. Vinton*, 631 F.3d 476, 481 (8th Cir. 2011).

Fourth Amendment principles inform the custody analysis because a seizure must occur before *Miranda* applies.  *United States v. Parker*, 993 F.3d 595, 601–02 (8th Cir. 2021) (citation omitted).  Officers may engage citizens in consensual encounters without implicating the Fourth Amendment.  These encounters ripen into seizures only when a reasonable person would no longer feel free to leave.  *United States v. Mabery*, 686 F.3d 591, 595 (8th Cir. 2012) (citing *United States v. Barry*, 394 F.3d 1070, 1074 (8th Cir. 2005)).

### 1.  Custody Determination

In determining custody, courts examine the totality of the circumstances with the guidance of six factors.  These include whether officers informed the suspect that questioning was voluntary, whether the suspect enjoyed unrestrained freedom of movement, and whether the suspect initiated or voluntarily participated in the encounter.  *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004) (citation omitted).  They also consider whether officers employed "strong arm tactics or deceptive stratagems," whether "a police-dominated atmosphere" existed, and whether arrest followed the questioning.  *Id.* (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)).

The Supreme Court's decision in *Minnesota v. Murphy* controls here.  In *Murphy*, a probationer met with his probation officer at her office as ordered and admitted to committing rape and murder years earlier.  465 U.S. 420, 422–23 (1984).  The Court held that the probationer was not in custody for *Miranda* purposes, emphasizing that a probationer's general obligation to appear

and answer questions truthfully "did not in itself convert [the] otherwise voluntary statements into compelled ones." *Id*. at 427.

*Murphy* explicitly limited its holding to non-custodial settings, emphasizing that the probationer "was not under arrest and that he was free to leave at the end of the meeting." *Id*. at 429 n.5. A "different question would be presented," the Court explained, "if he had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting." *Id*.

Applying these principles, the Court finds that Defendant was not in custody during his interview with Officer Yager. Like the probationer in *Murphy*, Defendant met with Officer Yager at a probation office pursuant to direction from probation officials. Although she was not his assigned probation officer, Defendant had met her previously and was familiar with her. His obligation to respond truthfully to probation officers' inquiries, mandated by the conditions of his supervised release, does not transform this otherwise non-custodial meeting into custodial interrogation.

Defendant argues that the interview occurred in an inherently coercive environment. The probation office, while located in a federal courthouse, does not possess the same inherently coercive atmosphere as a police station or jail. Defendant was familiar with this environment, having regularly reported there during his supervised release. The record contains no evidence that Defendant was restrained, that strong-arm tactics were employed, or that he was told he was under arrest. Indeed, Defendant was not arrested until after the probation officer filed a revocation motion.

That Defendant was required to appear at the probation office does not, standing alone, establish custody for *Miranda* purposes. As *Murphy* makes clear, a probationer's obligation to report and answer questions truthfully does not convert voluntary statements into compelled ones.

### B.  Voluntariness Analysis

Defendant's alternative argument—that his statements were involuntary—fares no better. A statement is voluntary when it is "the product of an essentially free and unconstrained choice by" the speaker. *Vinton*, 631 F.3d at 482 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). The voluntariness inquiry examines the totality of circumstances, considering "both the characteristics of the accused and the details of the interrogation." *Bustamonte*, 412 U.S. at 226. Coercive police activity is "a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Without "police overreaching," there can be no Due Process violation. *Id.* at 163.

The record reveals no coercive police activity or overreaching. Defendant reported to a familiar environment—the probation office where he had appeared many times during his supervised release. Officer Yager's questioning addressed an apparent violation of supervised release conditions and fell squarely within the scope of routine probation supervision. Nothing in the record suggests that Officer Yager employed threats, promises of leniency, or other coercive tactics. The questioning was brief and focused on matters directly related to Defendant's compliance with his conditions of release. The Court finds credible Officer Yager's testimony concerning the Probation Office meeting and Officer Amy Alvarez's account of the RRC encounter.

The principles announced in *Murphy* apply with equal force here.  Defendant's obligation to report to the probation office and answer questions truthfully—a standard condition of supervised release—does not render his statements involuntary.

### III.    CONCLUSION

For the reasons explained above, Defendant's statements to Officer Yager and to Officer Alvarez were neither the product of custodial interrogation nor involuntary.  The motion to suppress is DENIED.  [ECF Nos. 24, 25].

IT IS SO ORDERED.

Dated this 23rd day of September, 2025.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT